|  | UNITED STATES DISTRICT COURT<br>CENTRAL DISTRICT OF CALIFORNIA | JS-6 |
|---|---|---|
|  | **CIVIL MINUTES - GENERAL** |  |
| Case No. | CV 18-3414 PSG (SSx) | Date   June 8, 2018 |
| Title | Barnabas Clothing, Inc. et al. v. Kabbage, Inc. et al. | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|
| Wendy Hernandez | Not Reported |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**     Order GRANTING Defendants' motion to stay proceedings in favor of arbitration

Before the Court is a motion to stay proceedings in favor of arbitration filed by Defendants Kabbage, Inc. and Celtic Bank Corporation ("Defendants"). *See* Dkt. # 19 ("*Mot.*"). Plaintiffs Barnabas Clothing, Inc. and Alexander Aquino ("Plaintiffs") oppose the motion, *see* Dkt. # 43 ("*Opp.*"), and Defendants replied, *see* Dkt. # 47 ("*Reply*"). The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **GRANTS** Defendants' motion.

I.     Background

Beginning in September 2015, Plaintiff Barnabas Clothing, Inc. ("Barnabas") and its CEO, Plaintiff Aquino, acquired five business loans from Defendants. *See Complaint*, Dkt. # 2-1 ("*Compl.*"), ¶ 40. Although these loans purported to be from Defendant Celtic Bank Corporation ("Celtic Bank"), Plaintiffs claim that Defendant Kabbage, Inc. ("Kabbage") "in fact originated, underwrote, funded, and serviced the loans." *Id*. Plaintiffs allege that "[a]fter paying Kabbage thousands of dollars in principal and interest, [they] could no longer keep up with the usurious loan payments, at which time Kabbage began threatening Barnabas Clothing's owner," Aquino. *Id.* ¶ 44.

Plaintiffs initiated this putative class action in Los Angeles County Superior Court on March 22, 2018, claiming that "Kabbage aggressively markets, underwrites and services short-term loans to struggling small businesses in need of quick capital," loans that "often substantially exceed California's maximum legal interest rate." *Id.* ¶ 2. Plaintiffs further allege that in order to perpetuate this illegal scheme, "Kabbage entered into a criminal enterprise known as a 'rent-a-bank' scheme with Celtic Bank, a foreign bank chartered in Utah (a state, unlike California, with no maximum interest rate for commercial loans)." *Id.* ¶ 3. Plaintiffs seek certification of various California classes, *see id.* ¶ 45, and assert the following causes of action:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3414 PSG (SSx) | Date | June 8, 2018 |
|---|---|---|---|
| Title | Barnabas Clothing, Inc. et al. v. Kabbage, Inc. et al. | | |

First Cause of Action: Usury. *Id.* ¶¶ 70–77.

Second Cause of Action: Violation of 18 U.S.C. § 1962(c). *Id.* ¶¶ 78–96.

Third Cause of Action: Violation of 18 U.S.C. § 1962(d). *Id.* ¶¶ 97–101.

Fourth Cause of Action: Violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500. *Compl.* ¶¶ 102–16.

Fifth Cause of Action: Violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. *Compl.* ¶¶ 117–34.

Defendants now move the Court to stay this proceeding and compel arbitration, arguing that "[e]ach time [Plaintiffs] obtained one of the subject loans," they entered into a written agreement that "contain[ed] a broad arbitration provision that encompasses all of the claims" that Plaintiffs assert in their complaint. *Mot.* 1:14–19.

II.     Legal Standard

"The 'principal purpose' of the FAA [Federal Arbitration Act] is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). The FAA states that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4. "Because the FAA mandates that 'district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]' the FAA limits courts' involvement to 'determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)) (emphasis in original). When deciding whether a valid arbitration agreement exists, courts generally apply "ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3414 PSG (SSx) | Date | June 8, 2018 |
|---|---|---|---|
| Title | Barnabas Clothing, Inc. et al. v. Kabbage, Inc. et al. | | |

(1995). Any doubts about the scope of arbitrable issues must be resolved in favor of arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

If an arbitration agreement exists and covers the dispute at issue, section 4 of the FAA "requires courts to compel arbitration in accordance with the terms of the agreement." *Concepcion*, 563 U.S. at 344 (internal quotation marks omitted).

III.   Discussion

The Court will first determine whether a valid arbitration agreement exists and, if so, whether it covers this dispute.

In their motion, Defendants explain that each of the business loans that Plaintiffs requested were acquired using an online platform created by Kabbage ("the Kabbage Platform"). *See Mot.* 2:11–12; *see also Declaration of Clint Hill*, Dkt. # 20 ("*Hill Decl.*"), ¶ 10. Clint Hill, who is the "Head of Solution Architecture for Kabbage," *Hill Decl.* ¶ 2, explains that "[t]he Kabbage Platform allows small businesses like [Barnabas] to apply for commercial loans funded and originated by Celtic Bank." *Id.* ¶ 4. He further describes the process through which Plaintiffs obtained the loans at issue:

> Each time Plaintiffs obtained a small business loan from Celtic Bank . . . the Kabbage Platform walked Plaintiffs through a series of prompts to complete each loan transaction. . . . First, the Kabbage Platform prompted Plaintiffs to select a loan amount and repayment term. . . . Second, the Kabbage Platform prompted Plaintiffs to enter bank account and routing numbers if Plaintiffs had not already done so for a previous loan. . . . Third, the Kabbage Platform prompted Plaintiffs to confirm the amount of loan funds requested. . . . Fourth, the Kabbage Platform provided Plaintiffs with a full copy of the "Kabbage Business Loan Agreement" that governed [their] loan. . . . After presenting Plaintiffs with a copy of the Business Loan Agreement, the Kabbage Platform required Plaintiffs to affirmatively "check" a box indicating that they "understand that [they have] the responsibility to read [The Business Loan Agreement] and have had an opportunity to do so." . . . In addition, the Kabbage Platform required Plaintiffs affirmatively to accept the terms of the Business Loan Agreement by selecting the "Accept" prompt below the Business Loan Agreement.

*Id.* ¶¶ 13–20, Exs. B–E. Hill provides the text of the Business Loan Agreement that accompanied each loan. *See id.* ¶ 10, Ex. A ("*Agreement*"). Section 2.3, titled "Arbitration" ("the Arbitration Provision"), provides that "[a]ll Claims shall be resolved through arbitration

Case 2:18-cv-03414-PSG-SS   Document 49   Filed 06/08/18   Page 4 of 6   Page ID #:453

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3414 PSG (SSx) | Date | June 8, 2018 |
|---|---|---|---|
| Title | Barnabas Clothing, Inc. et al. v. Kabbage, Inc. et al. | | |

pursuant to this section rather than by litigation." *Agreement* § 2.3. It notes that "[t]he term 'Claims' in this Agreement is to be given the broadest possible meaning." *Id.* § 2.2. In addition, a preceding section reads as follows:

> **SIGNIFICANCE OF ARBITRATION; LIMITATIONS AND RESTRICTIONS. IN ARBITRATION, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO (i) HAVE A COURT OR JURY DECIDE THE CLAIM BEING ARBITRATED, (ii) ENGAGE IN PRE ARBITRATION DISCOVERY (THAT IS, THE RIGHT TO OBTAIN INFORMATION FROM THE OTHER PARTY) TO THE SAME EXTENT THAT YOU OR WE COULD IN COURT, (iii) PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN A CLASS ACTION, IN COURT OR IN ARBITRATION, RELATING TO ANY CLAIM SUBJECT TO ARBITRATION OR (iv) JOIN OR CONSOLIDATE CLAIMS OTHER THAN YOUR OWN OR OUR OWN. OTHER RIGHTS AVAILABLE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

*Id.* § 2.1 (emphasis in original). Lastly, a subsequent provision requires that

> **THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY.**

*Id.* § 5.11 (emphasis in original).

"[A]rbitration is a matter of contract," *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986), and so "[i]n determining the validity of an agreement to arbitrate, federal courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (quoting *Kaplan*, 514 U.S. at 944). With these principles in mind, the Court agrees that Plaintiffs entered into valid arbitration agreements with Defendants. Plaintiffs indicated that they accepted the Arbitration Provision by selecting the "Accept" prompt located in the Kabbage Platform. *See Hill Decl.* ¶ 20. This is sufficient to create an agreement under both Utah law—as Defendants note, "the applicable law designated under the Business Loan Agreements," *Mot.* 7:13–14—and California law. *See, e.g.*, *Nazaruk v. eBay, Inc.*, No. 2:06CV242DAK, 2006 WL 2666429, at *3 (D. Utah Sept. 14, 2006) (determining that "Plaintiff was required to expressly agree to the terms of eBay's User Agreement when she established her account" and did so when "she clicked on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3414 PSG (SSx) | Date | June 8, 2018 |
|---|---|---|---|
| Title | Barnabas Clothing, Inc. et al. v. Kabbage, Inc. et al. | | |

the 'I Accept' button when registering with eBay"); *Commercial Union Assocs. v. Clayton*, 863 P.2d 29, 34 (Utah Ct. App. 1993) (quoting *Ercanbrack v. Crandall-Walker Motor Co.*, 550 P.2d 723, 725 (Utah 1976)) ("It is a fundamental contract law that the parties may become bound by the terms of a contract even though they did not sign the contract, where they have otherwise indicated their acceptance of the contract, or led the other party to so believe that they have accepted the contract."); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(Ex), 2017 WL 4685039, at *11 n. 7 (C.D. Cal. July 17, 2017) (holding that "the disclosure and hyperlink that appear on the Amazon checkout page" bound plaintiff to its conditions of use and arbitration provision therein); *Swift v. Zynga Game Networks, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) ("Because Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept,' . . . a binding contract was created here. . . . [C]lickwrap presentations providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient."); *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("A party's acceptance of an agreement to arbitrate may be express, as where a party signs the agreement. A signed agreement is not necessary, however, and a party's acceptance may be implied in fact.").

Having determined that Plaintiffs agreed to a valid arbitration provision, the Court must now determine "whether the agreement encompasses the dispute at issue." *Cox*, 533 F.3d at 1119. Here, the Arbitration Provision provides that "[t]he term 'Claims' in this Agreement is to be given the broadest possible meaning," which includes "Claims regarding the validity, enforceability or scope of this Arbitration section or this Agreement including but not limited to whether a given claim or dispute is subject to arbitration." *Agreement* § 2.2. The Supreme Court has held that claims must be arbitrated "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," and that "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT & T Techs.*, 475 U.S. at 650. Here, Defendants contend, and the Court agrees, that Plaintiffs' claims fall within the broad definition provided by the Arbitration Provision. *See Guerrero v. Equifax Credit Info. Servs., Inc.*, No. CV 11-6555 PSG (PLAx), 2012 WL 7683512, at *8 (C.D. Cal. Feb. 24, 2012) (determining that a broad arbitration clause applying to "any claim, dispute, or controversy between you and us" required arbitration). Indeed, Plaintiffs do not appear to dispute this proposition. *See Opp.* 11:20–21 ("Plaintiffs are not asking this Court to determine whether their claims would fall within the scope of the agreement."). Accordingly, the Court concludes that the Arbitration Provision is valid and enforceable and that it encompasses Plaintiffs' claims.

In opposition, Plaintiffs principally argue that Defendants sold their right to compel arbitration. *See Opp.* 6:3–10:9. However, the Court agrees with Defendants that this is an issue

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 18-3414 PSG (SSx) | Date | June 8, 2018 |
|---|---|---|---|
| Title | Barnabas Clothing, Inc. et al. v. Kabbage, Inc. et al. | | |

for the arbitrator, and not for this Court, to decide. The Arbitration Provision at issue clearly delegates such questions to the arbitrator. *See Agreement* § 2.2 (delegating "Claims regarding the validity, enforceability or scope of this Arbitration section or this Agreement including but not limited to whether a given claim or dispute is subject to arbitration" to the arbitrator). "Although gateway issues of arbitrability presumptively are reserved for the court, the parties may agree to delegate them to the arbitrator." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011). That is the case here due to the breadth of the Arbitration Provision, and the court must therefore "enforce the parties' 'agreement to arbitrate threshold issues' regarding the arbitrability of their dispute." *Id.* (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). As Defendants correctly note, "challenges to a signatory or assignee's right to enforce an arbitration agreement are questions of arbitrability that fall squarely within the scope of delegation provisions like the one [Plaintiffs] agreed to here." Reply 3:6–8; *see also Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (determining that where plaintiff "agreed to be bound by provisions that clearly and unmistakably allow the arbitrator to determine her own jurisdiction over an agreement to arbitrate whose continued existence and validity is being questioned, it is the province of the arbitrator to decide whether a valid arbitration agreement exists") (internal quotation marks omitted); *Grigsby v. DC 4400, LLC*, No. 5:16-cv-01809-CAS (SPx), 2016 WL 7115903, at *5 (C.D. Cal. Dec. 5, 2016) ("[P]laintiffs' arguments that not every defendant here was a party to the Agreement and that the Agreement is unconscionable are unavailing. Plaintiff is free to raise these challenges to the arbitrability of their claims with the arbitrator."); *Mason v. BMW Fin. Servs.*, No. EDCV 15-01323-VAP (DTBx), 2015 WL 12781212, at *3 (C.D. Cal. Nov. 17, 2015) ("Plaintiff contests the contract's validity, and thus his claim must be considered by the arbitrator in the first instance.") (internal quotation marks omitted). In short, Plaintiffs' challenges to the Arbitration Provision are issues that, subject to the applicable delegation clause, must be addressed by an arbitrator, not the Court.

IV.     Conclusion

      For the foregoing reasons, the Court **GRANTS** Defendants' motion to stay proceedings in favor of arbitration. This action is hereby **STAYED** "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3.

      The case is administratively closed and may be reopened upon application of any party.

      **IT IS SO ORDERED.**